**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **HADI AL BOROKY, #212-172-222,** | § | |
| **Petitioner,** | § | |
| | § | |
| **v.** | § | **3:14-CV-2040-L-BK** |
| | § | |
| **ERIC HOLDER, JR., et al.,** | § | |
| **Respondents.** | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

On June 5, 2014, Petitioner, an alien detainee, filed a *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2241, which was automatically referred to the undersigned Magistrate Judge. *See* 28 U.S.C. § 636(b) and *Special Order 3*. For the reasons that follow, the petition should be **DENIED WITHOUT PREJUDICE.**

**I. BACKGROUND**

Petitioner, a native and a citizen of Iraq, entered the United States in May 2009 as a refugee. [Doc. 7 at 19]. Removal proceedings were initiated based on his criminal convictions for credit card fraud and family violence and, on October 15, 2013, he was ordered removed from the United States. [Doc. 7 at 19; Doc. 6 at 4].[1] Because he did not reserve the right to appeal, the order of removal became final on that date, and shortly thereafter, the Bureau of Immigration and Custom Enforcement (ICE) began the process of obtaining travel documents. [Doc. 6 at 4]. However, the Iraqi Embassy in Washington, D.C., returned the initial request with instructions to resubmit it to the Consulate General of the Republic of Iraq in Los Angeles,

[1] Petitioner's initial entry as a refugee and the basis for his removal are summarized in the August 20, 2014 *Decision to Continue Detention* attached to his reply. [Doc. 7 at 19].

1

which in turn denied the same in November 2013 because Petitioner did not have valid Iraqi documents or any other proof of his Iraqi nationality.  [Doc. 6 at 4-5].  In February 2014, following Petitioner's return to Dallas County on a warrant for assault family violence, assistance was sought from ICE Headquarters Travel Document Unit (HQ TDU), and ICE and Department of State officials met with the Iraqi Embassy to establish a more efficient process for obtaining travel documents.  [Doc. 6 at 5-6].  Then, in April 2014, the Consulate General of Iraq denied a re-submitted travel-document request, specifying for the first time that valid original Iraqi documents were required for issuance of travel documents under Iraqi regulations.  [Doc. 6 at 7].  Even after an agreement to reconsider, the Iraqi Embassy again denied travel documents in May 2014, and ICE unsuccessfully sought travel documents from Lebanon and Pakistan in June 2014.  [Doc. 6 at 7].

In July 2014, while gathering evidence for a potential criminal prosecution against Petitioner for unauthorized possession of a cell phone while in a detention facility, his deportation officer obtained an original Iraqi identification document from an outside affiliated party.  [Doc. 6 at 8].  Petitioner had previously informed this deportation officer and numerous other ICE officers that all of his original Iraqi identity documents were lost when he sold a vehicle that contained them.  [Doc. 6 at 8].  Respondents state that the new identification document was added to Petitioner's travel document request package with HQ TDU.  [Doc. 6 at 8].  Subsequently, in August 2014, Petitioner was notified that ICE had reviewed his custody (as it had done in February 2014) and that his detention would be continued.  [Doc. 7 at 19-20].

In this action, Petitioner challenges his post-final-removal order detention, claiming it violates his due process rights and exceeds the six-month reasonable period of detention under

*Zadvydas v. Davis*, 533 U.S. 678 (2001).  [Doc. 2 at 7-8].  Respondents argue the petition lacks

merit and Petitioner has filed a reply.  [Doc. 5; Doc. 7].[2]

## II. ANALYSIS

In *Zadvydas v. Davis*, 533 U.S. 678, 700-701 (2001), the United States Supreme Court

held that detention under 8 U.S.C. § 1231(a)(6) may not continue indefinitely, and that six

months, counted from the date the order of removal becomes final, is a presumptively reasonable

period of detention to secure an alien's removal from the United States.  After the expiration of

six months, if "the alien provides good reason to believe that there is no significant likelihood of

removal in the reasonably foreseeable future, the Government must respond with evidence

sufficient to rebut that showing." *Id.* at 701.  The Supreme Court emphasized that the "6-month

presumption . . . does not mean that every alien not removed must be released after six months."

*Id.*  "To the contrary, an alien may be held in confinement until it has been determined that there

is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Here, Petitioner fails to meet his initial burden of proof under *Zadvydas*, namely that

there is no likelihood of removal in the reasonably foreseeable future.  *See Andrade v. Gonzales,*

*459 F.3d 538, 543-544 (5th Cir. 2006)* (discussing a petitioner's burden of proof under

*Zadvydas*).  Apart from his conclusory allegations, he has offered nothing to suggest that his

removal is not foreseeable.  *See Id.* (holding conclusory statements are insufficient to meet an

---

[2] Although Respondents note in passing "that *Zadvydas* may well be irrelevant" where the alien
creates obstacles to block his removal, they do not claim that 8 U.S.C. § 1231(a)(1)(C) applies to
Petitioner.  [Doc. 5 at 12].  *See Blankson v. Mukasey, 261 Fed. Appx. 758, 759 (5th Cir. 2008)*
(removal period extended under section 1231(a)(1)(A) where the petitioner's frequently
changing claims interfered with the respondent's ability to remove him).

alien's burden of proof under *Zadvydas* or to demonstrate a constitutional violation in connection with his continued detention).

While the Iraqi Embassy's position has been that it will not issue travel documents until two original Iraqi identification documents are produced, Petitioner has not been forthright about the missing documentation.  He initially told his deportation officer and numerous other ICE officers, that he lost all Iraqi identification documents when he sold a car that allegedly contained the documents.  [Doc. 6 at 8].  He has now changed his story.  In his reply, he asserts for the first time that he entered the United States without an original Iraqi identification document and that his Iraqi passport, which he later abandoned, was taken by Lebanese authorities in 2007.  [Doc. 7 at 2-3].  He also denies advising his deportation officer that his original Iraqi identification documents were lost, claiming instead that he had lost only "his temporary passport from the United Nation [sic]."  [Doc. 7 at 2 and n. 1].

Petitioner offers no explanation for the belated change in his story or why he failed to mention it in his federal petition.[3]  He speculates that whether he "was misunderstood or misinterpreted does not change the fact that he does not possess any original document."  [[Doc. 7 at 3].  He maintains that a search of his apartment, contemporaneously with his October 2013 arrest, "revealed nothing."  [Doc. 7 at 6].  He also claims that Respondents have "made a false claim of having [obtained] an original identity document," since the Consulate General of the Republic of Iraq has not received any new document from ICE.  [Doc. 7 at 6, 7].

---

[3] Not surprisingly, Petitioner's reply is not supported by an affidavit or sworn under penalty of perjury. *See* 28 U.S.C. § 1746.  Yet, he urges that "[e]verything that is brought to this court is the absolute truth and nothing but the truth."  [Doc. 7 at 8].

Respondents indicate that the new identification document was not forwarded to the Iraqi Consulate, but was instead added to Petitioner's travel document request package with HQ TDU. [Doc. 6 at 8; Doc. 7 at 3].  Respondents further attack Petitioner's credibility, averring that "he was inaccurate in his assertion that Iraq stated it would not issue travel documents for him." [Doc. 5 at 14].  They also point to other allegedly inconsistent statements made by Petitioner, Doc. 5 at 14-15 and note 2; Doc. 6 at 12-19, which he disputes, Doc. 7 at 2, 7, 11-13.

That notwithstanding, Petitioner's situation is in marked contrast with that of Kim Ho Ma and Kestutis Zadvydas, the aliens whose detentions were considered "potentially permanent" in *Zadvydas*.  Ma was from Cambodia, a country with which the United States has no repatriation agreement.  As a result there was virtually no hope of repatriating him back to his native land. *Zadvydas*, 533 U.S. at 686.  Likewise *Zadvydas*, having been born in a refugee camp, was literally a man without a country and, therefore, was an individual whom no other nation would ever accept, no matter the efforts of immigration authorities.  *Id.* at 684.

Here, even under the most deferential review,[4] Petitioner cannot establish that his detention will be of an indefinite duration as in *Zadvydas*.  Petitioner has presented nothing concrete to suggest that ICE is incapable of executing his removal to Iraq in the near future. Accordingly, at the present time, the Court finds no violation of Petitioner's constitutional rights with respect to his continued detention or that there is no significant likelihood of removal in the reasonably foreseeable future.

---

[4] *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (allegations of a *pro se* litigant are held to less stringent standards than formal pleadings drafted by lawyers).

### III. RECOMMENDATION

For the foregoing reasons, it is recommended that that the petition for writ of habeas corpus be **DENIED WITHOUT PREJUDICE** to Petitioner's right to re-file if his circumstances change, through no fault of his own, and there is no significant likelihood of removal after this proceeding concludes.

SIGNED October 27, 2014.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

### INSTRUCTIONS FOR SERVICE AND
### NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE